UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

| | |
|---|---|
| SHARON D. FLOYD, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 2:19-cv-11599 |
| CREDIT ACCEPTANCE CORPORATION, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

**NOW COMES** Sharon D. Floyd ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., complaining as to the conduct of the Defendant, Credit Acceptance Corporation ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227 and violations of the Michigan Occupational Code ("MOC") pursuant to M.C.L. §339.901.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the TCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Eastern District of Michigan, a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of Michigan, and Plaintiff resides in the Eastern District of Michigan.

## PARTIES

4. Plaintiff is a natural person over 18-years-of-age who is a "person" as defined by 47 U.S.C. §153(39).

5. Defendant is an auto finance company providing automobile loans and other related financial products. Defendant's principal office is located at 25505 West 12 Mile Road, Suite 3000, Southfield, Michigan 48034.

## FACTS SUPPORTING CAUSE OF ACTION

6. On February 1, 2019, Plaintiff financed an automobile from D&D All American Auto Sales ("D&D"). Plaintiff was able to finance her automobile through an automobile loan ("subject debt") obtained from Defendant.

7. A few days after Plaintiff financed her automobile, Plaintiff began experiencing major mechanical issues with the automobile. The brakes were not working properly and the engine failed to function. At this point, Plaintiff had made one payment to Defendant in the amount of $50.00.

8. Plaintiff immediately informed D&D and Defendant about her automobile's issues. She further explained to them that she is on disability and she is not able to repair and finance the automobile due to her financial status. D&D informed Plaintiff that she bought the automobile "as is," and there is nothing it could do to assist her. Defendant communicated to Plaintiff that she must satisfy the subject debt regardless of the condition of the automobile.

9. Plaintiff was so dismayed she wrote a complaint to the State Attorney General in an attempt to seek assistance.

10. On February 5, 2019, Defendant began placing continuous collection calls to Plaintiff's cellular telephone number, (313) XXX-7323, in an attempt to collect on the subject debt

11. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of her cellular telephone number ending in 7323. Plaintiff is and has always been financially responsible for this cellular telephone and its services.

12. Plaintiff was incensed with the number of calls she was receiving, and asked Defendant to stop calling her.

13. Despite Plaintiff's request, Defendant continued to place multiple calls to Plaintiff's cellular phone.

14. Frustrated by Defendant's failure to cease placing calls to her cellular phone, Plaintiff answered a phone call from Defendant and *again* demanded that Defendant

cease calling her. She further informed Defendant that she was not able satisfy the subject debt. Additionally, Plaintiff stated that Defendant could take the automobile in satisfaction of the subject debt. Defendant replied that it would continue calling Plaintiff until she satisfies the subject debt.

15. Failing to acquiesce to Plaintiff's demands that it stops calling, Defendant continued to call Plaintiff on her cellular phone.

16. Notwithstanding Plaintiff's request that Defendant cease placing calls to her cellular phone, Defendant placed or caused to be placed numerous harassing phone calls to Plaintiff's cellular telephone between February 2019 and the present day.

17. Moreover, in the phone calls Plaintiff answered, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's telephone system attempted to connect Plaintiff to a live agent.

18. Specifically, there would be an approximate 3 second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant attempting to collect on the subject debt.

19. Plaintiff also hears what sounds to be call center noise in the background of Defendant's collection calls.

20. Plaintiff's demands that Defendant's phone calls cease went unheeded and Defendant continued its phone harassment campaign.

21. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling with such frequency as can be reasonably expected to harass.

22. Upon information and belief, Defendant placed its calls to Plaintiff's cellular telephone using an automated telephone dialing system that is commonly used in the debt collection industry to collect defaulted debts.

23. The phone numbers that Defendant most often uses to contact Plaintiff are (313) 263-1173 and (734) 521-2063, but upon information and belief, it may have used other phone numbers to place calls to Plaintiff's cellular phone.

## DAMAGES

24. Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

25. Plaintiff has expended time consulting with her attorneys as a result of Defendant's harassing collection efforts.

26. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, increased risk of personal injury resulting from the distraction caused by the phone calls, aggravation that accompanies unsolicited debt collection calls, harassment, emotional distress, anxiety, loss of concentration, diminished value and utility of her telephone equipment and telephone subscription

services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to her cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her telephone services.

27. Concerned about the violations of her rights and invasion of her privacy, Plaintiff sought the assistance of counsel to permanently cease Defendant's collection efforts.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

28. Plaintiff restates and realleges paragraphs 1 through 27 as though fully set forth herein.

29. Defendant repeatedly placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") or prerecorded or artificial voice without Plaintiff's prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

30. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

31. Upon information and belief, based on Defendant's lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used an ATDS to place calls to Plaintiff's cellular telephone.

32. Upon information and belief, the ATDS employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

33. Defendant violated the TCPA by placing numerous harassing phone calls to Plaintiff's cellular phone between February 2019 and the present day, using an ATDS without her prior consent.

34. Any prior consent, if any, was revoked by Plaintiff's verbal revocations.

35. As pled above, Plaintiff was severely harmed by Defendant's collection calls to her cellular phone.

36. Upon information and belief, Defendant has no system in place to document and archive whether it has consent to continue to contact consumers on their cellular phones.

37. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

38. Defendant, through its agents, representatives, subsidiaries, vendors, third-party contractors, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

39. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per phone call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA triggers this Honorable Court's discretion to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff SHARON D. FLOYD respectfully prays this Honorable Court for the following relief:
  a. Declare Defendant's phone calls to Plaintiff to be violations of the TCPA;
  b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and
  c. Awarding Plaintiff costs and reasonable attorney fees;
  d. Enjoining Defendant from further contacting Plaintiff; and
  e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE MICHIGAN OCCUPATIONAL CODE

40. Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

41. Plaintiff is a "consumer" or "debtor" as defined by M.C.L § 339.901(f) as she is a person that is obligated or allegedly obligated to pay a debt.

42. Defendant is a "collection agency" as defined by M.C.L. § 339.901(b) as it is a person that is directly engaged in collecting or attempting to collect a claim owed or due or asserted to be owed or due another.

43. The subject debt is a "[c]laim" or "debt" as defined by M.C.L. § 339.901(a) as it is an obligation or alleged obligation for the payment of money or thing of value arising out of an agreement or contract for a purchase made primarily for personal, family, or household purposes.

    a.    **Violations of M.C.L. § 339.915(f)(ii)**

44. The MOC, pursuant to M.C.L. § 339.915(f)(ii) prohibits a collection agency from "[m]isrepresenting in a communication with a debtor . . . [t]he legal rights of the creditor or debtor."

45. Defendant violated M.C.L. § 339.915(f)(ii) by repeatedly contacting Plaintiff's cellular phone using an automated system absent consent. Any hypothetical lawful ability of Defendant to place the calls at issue was explicitly removed after plaintiff demanded that it cease calling her cellular phone. As such, Defendant misrepresented its legal rights in placing the phone calls, as well as Plaintiff's legal rights to have such phone calls cease, by continuing to contact Plaintiff's cellular phone absent the lawful ability to do so.

### b. Violations of M.C.L. § 339.915(n)

46. The MOC, pursuant to M.C.L. § 339.915(n), prohibits a collection agency from "[u]sing a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places which are known to be inconvenient to the debtor."

47. Defendant violated the MOC when it repeatedly called Plaintiff after being notified to stop. Defendant called Plaintiff numerous times after she demanded that it stop. This repeated behavior of systematically calling Plaintiff's phone in spite of her demands in an attempt to collect a debt was harassing and abusive. Such contacts were made with the hope that Plaintiff would succumb to the harassing behavior and ultimately make a payment. The nature and volume of phone calls, especially after Plaintiff demanded that the calls stop, would naturally cause an individual to feel oppressed.

48. Plaintiff told Defendant that its calls to her cellular phone were not welcome and were therefore inconvenient. As such, Defendant contacted Plaintiff at times and places which were known to be inconvenient to her.

### c. Violations of M.C.L. § 339.915(q)

49. The MOC, pursuant to M.C.L. § 339.915(q), subjects collection agencies to liability for "[f]ailing to implement a procedure designed to prevent a violation by an employee."

50. Defendant violated the MOC by failing to adequately have procedures in place designed to prevent a violation by its employee(s). Plaintiff demanded that Defendant stop calling. Notwithstanding Plaintiff's clear request, Defendant continued calling. This demonstrates the lack of any procedures in place Defendant designed to address consumer requests that incessant phone calls are inconvenient and should cease. As such, Defendant has failed to implement procedures designed to prevent its employees from engaging in harassing, oppressive, or abusive methods in connection with its collection of debts.

51. Defendant's violations of the MOC were willful. Defendant was notified by Plaintiff that she did not wish to receive any more phone calls. Yet, Plaintiff was still bombarded with collection phone calls from Defendant. In a willful manner, Defendant called Plaintiff repeatedly notwithstanding her demands. Upon information and belief, Defendant regularly engages in the above described behavior against consumers in Michigan, further demonstrating its willful failure to implement adequate procedures designed to prevent violations of the MOC.

**WHEREFORE**, Plaintiff SHARON D. FLOYD respectfully prays this Honorable Court for the following relief:

a. Declare Defendant's phone calls to Plaintiff to be violations of the MOC;

b. Enjoining Defendant from further contacting Plaintiff, pursuant to M.C.L. § 339.916(1);

c. Awarding Plaintiff actual damages, including treble damages, pursuant to M.C.L. § 339.916(2);

d. Awarding Plaintiff statutory damages of at least $50.00, including treble damages, pursuant to M.C.L. § 339.916(2);

e. Award Plaintiff costs and reasonable attorney fees, pursuant to M.C.L. § 339.916(2); ;

f. Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: May 30, 2019                    Respectfully Submitted,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com